**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

DENNY DAVIS,                    :
                               :    **Case No. 2:04-CV-303**
         Plaintiff,            :
                               :
    v.                         :    **Magistrate Judge Norah McCann King**
                               :
                               :
REGINALD A. WILKINSON, *et al.*, :
                               :
         Defendants.           :

**OPINION AND ORDER**

Plaintiff, a state inmate, brings this action under 42 U.S.C. §1983 ("Section 1983 ")

alleging unconstitutional delay of medical care.  The defendants in this action are Ross

Correctional Institution ("RCI") Medical Director Dr. Bruce Martin, RCI Chief Dr. James

Coulter and RCI Health Care Administrator Terry Hopkins.  *Complaint*, ¶¶ 5, 8, 9.  With the

consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Defendants' Motion

for Summary Judgment*.  Doc. No. 31.  For the reasons that follow, defendants' motion is

**GRANTED**.

**I.      FACTS**

On April 17, 2002, plaintiff injured his left ankle while playing basketball at RCI.

*Interdisciplinary Progress Notes*, attached as *Exhibit B* to *Plaintiff's Memorandum Contra

Defendants' Motion for Summary Judgment* ("*Plaintiff's Memorandum Contra*");  *Medical Exam

Report*, attached as *Exhibit A* to *Defendants' Motion for Summary Judgment*.  On that same day,

plaintiff was seen by a nurse at RCI's Inmate Health Services ("IHS").  *Interdisciplinary*

*Progress Notes*.  Plaintiff complained to the nurse that his ankle was painful and that he could

not move it.  *Id.*  The nurse noted that the ankle showed a moderate amount of swelling but no

discoloration.  *Id.*  The nurse instructed plaintiff to apply ice every fifteen minutes for the

swelling and gave him Tylenol for pain.  *Id.*  Additionally, the nurse wrapped the ankle with an

Ace bandage, gave plaintiff crutches and instructed him to elevate the ankle.  *Id.*  Finally, the

nurse scheduled an appointment for an x-ray for the following morning and informed plaintiff to

let the prison staff know if the ankle got worse.  *Id.*

      Although the x-ray was scheduled for the morning of April 18, 2002, plaintiff argues that

it was not taken until April 19, 2002, the second day after the ankle injury.  *Complaint*, ¶ 5.  The

x-ray was inconclusive, showing a "possible acute chip or avulsion fracture."  *X-Ray*

*Impressions* attached as *Exhibit M* to *Plaintiff's Memorandum Contra* ("*First X-Ray*

*Impressions*").  Plaintiff was scheduled to meet with Dr. Coulter on April 25, 2002, to discuss

the results of the x-rays.  *Plaintiff's Memorandum Contra*, at 5.  Plaintiff, however, contends that

he was in pain so he requested and was granted permission to go to IHS on April 23, 2005.  *Id.*;

*Complaint*, ¶17. Once at IHS, plaintiff requested and was granted an appointment with Dr.

Coulter that same day.  *Consultation Request* attached as *Exhibit T* to *Plaintiff's Memorandum*

*Contra*.

      Dr. Coulter informed plaintiff that there was a possible chip fracture in his left ankle.

*Interdisciplinary Progress Notes*; *First X-Ray Impressions*.  Dr. Coulter directed plaintiff to use

crutches, to remain non-weight bearing on the ankle and to keep the ankle wrapped.

*Interdisciplinary Progress Notes*.  Additionally, Dr. Coulter told plaintiff that plaintiff would be

sent to the orthopedic clinic.  *Id.*  That same day, *i.e.*, April 23, 2002, Dr. Coulter completed a

consultation request for plaintiff at the orthopedic clinic. *Doctor's Orders* attached as *Exhibit D* to *Defendants' Motion for Summary Judgment*.

Plaintiff was scheduled for transport to the orthopedic clinic on May 9, 2002. *Complaint*, ¶ 11. This date was chosen because there was a previously scheduled bus going to the orthopedic clinic on that day. *Id.* Plaintiff contends that defendants should have allowed him to be housed in a medical facility until he was seen at the orthopedic clinic because he "had a difficult time caring for himself and suffered great mental and emotional trauma, physical pain and humiliation." *Id.*, ¶ 15. Specifically, plaintiff alleges that he was unable to take a shower without putting weight on his injured ankle because there was nothing to sit on in the shower and the crutches would slide on the wet floor. *Id.* Plaintiff further alleges that he "missed meals and had to take sponge baths out of a sink in his cell." *Id.* Finally, plaintiff contends that his cell-mate had to re-apply the Ace bandage to plaintiff's ankle after bathing. *Id.*

During the course of discovery, plaintiff asked Dr. Coulter:

> After the Plaintiff injured his ankle 4/17/02, it was swollen, black and blue and he could not put any weight on it at all. The Plaintiff had to wear gym shorts to and from the shower. To take a shower, the Plaintiff would have to put weight on the ankle which would cause unbearable pain. Why would you not move the Plaintiff to a [medical facility] where he could take a bath or sit in a shower?

*Dr. Coulter's Answers to Second Set of Interrogatories* attached as *Exhibit AB* to *Plaintiff's Memorandum Contra*. Dr. Coulter answered:

> As I recall, the ankle was not swollen or discolored. When I viewed the x-rays, I decided to place [plaintiff] on crutches. . . . I . . . did not feel that [plaintiff] needed to be placed [in a medical facility].

*Id.*

3

Additionally, plaintiff contends that Dr. Coulter should have prescribed the anti-coagulant blood thinner Coumadin after the injury because plaintiff had previously suffered a deep vein thrombosis ("DVT")[1] in his right leg for which he had been treated with Coumadin. *Complaint*, ¶ 19.  Plaintiff alleges:

> This history [of a previous DVT] put the Plaintiff at a higher risk for developing another Blood Clot, even more so after he fracture [*sic*] his left ankle.  The medical history of the Plaintiff should have affected the decision by defendants Coulter and Hopkins concerning the placement and treatment of the Plaintiff.

*Complaint*, ¶ 19.  Plaintiff contends that he presented several risk factors for the development of DVT.  *Plaintiff' Memorandum Contra*, at 12-13, 18-20.  Specifically, plaintiff contends that he was over the age of forty (40), that he was obese (or at least overweight), that he had suffered trauma to his ankle and that, because of the trauma, his leg was immobile for a prolonged period of time.  *Id.*  Plaintiff alleges that, because defendants "knew of [his] medical history and chose to disregard it," he suffered a DVT in his left leg.  *Complaint*, ¶ 20.

On approximately April 26, 2002, plaintiff's father spoke by telephone with defendant Terry Hopkins about his concerns that his son had not been seen at the orthopedic clinic. *Affidavit of Shirley R. Davis* attached as *Exhibit P* to *Plaintiff's Memorandum Contra*.  On approximately May 6, 2002, plaintiff's wife, a registered nurse, called RCI requesting that she be informed of the date of the orthopedic appointment and threatened to call an attorney if plaintiff were not sent to the clinic.  *Interdisciplinary Progress Notes* attached as *Exhibit C* to *Plaintiff's Memorandum Contra* ("*Second Set of Interdisciplinary Progress Notes*").  Plaintiff contends that

---

[1]A DVT is a blood clot that can cause stroke or death if not treated.  *Dr. Coulter's Answers to First Set of Interrogatories* attached as *Exhibit D* to *Plaintiff's Memorandum Contra.*

his wife and his father were both concerned that plaintiff's ankle injury could cause another DVT because of plaintiff's history. *Complaint*, ¶¶ 21, 22.

On May 9, 2002, *i.e.*, the previously scheduled date, plaintiff was transported by bus to the orthopedic clinic. *Id.*, ¶ 44. Plaintiff alleges that the bus ride caused him a great deal of pain and posed risk to him because, by that time, he had developed a DVT. *Id.* Plaintiff argues that he should have been transported instead by van. *Id.*

Once at the orthopedic clinic, plaintiff was seen by defendant Dr. Bruce Martin. *Corrections Medical Center Admission Assessment Flow Sheet* attached as *Exhibit* K to *Plaintiff's Memorandum Contra.* A second x-ray of plaintiff's left ankle was taken, which indicated that "no complete fracture lines are identified." *X-Ray Impressions* attached as *Exhibit* F to *Defendants' Motion for Summary Judgment.* Dr. Martin's report notes tenderness in plaintiff's left calf. *Emergency Assessment Form* attached as *Exhibit A* to *Plaintiff's Memorandum Contra.* Dr. Martin ordered an air cast and a doppler scan of plaintiff's left leg. *Id.*

The doppler scan performed that same date at the Ohio State University Hospital, documented a DVT in plaintiff's left leg. *Emergency Assessment Form*; *Technical Findings Report* attached as *Exhibit E* to *Plaintiff's Memorandum Contra.* Plaintiff was prescribed Lovenex and Coumadin to thin his blood and to dissolve the DVT. *Transfer Certificate* attached as *Exhibit G* to *Plaintiff's Memorandum Contra*; *Emergency Record* attached as *Exhibit H* to *Plaintiff's Memorandum Contra.* Plaintiff was admitted to the hospital for treatment. *Id.*

Plaintiff claims that the DVT developed in his left leg because of defendants' deliberate indifference to his medical history. *Complaint*, ¶ 30. He contends that had Coumadin been

prescribed as a "precautionary" measure, he "would not have developed" the DVT.  *Id.*

On May 23, 2002, a third x-ray was taken of plaintiff's ankle.  *X-Ray Impressions* attached as *Exhibit G* to *Defendants' Motion for Summary Judgment*.  The results showed "[n]o acute fracture or dislocation is seen."  *Id.*

On May 28, 2002, plaintiff returned to RCI.  *Second Set of Interdisciplinary Progress Notes*.  Plaintiff had an air cast on his left ankle and had been directed to gradually increase weight on the ankle as tolerated.  *Id.*  Hospital discharge papers made no mention of a continuing DVT.  *Corrections Medical Center Discharge Summary* attached as *Exhibit N* to *Plaintiff's Memorandum Contra*.  On that same day, plaintiff was seen by Dr. Coulter, was re-issued crutches and was given a prescription for Coumadin.  *Id.*  Plaintiff alleges that he is required to take Coumadin for the rest of his life and that the DVT caused him to suffer extreme physical and emotional pain.  *Complaint*, ¶ 31.

On April 20, 2004, plaintiff filed a verified complaint in this Court alleging unconstitutional delay of medical care.  On June 28, 2005, defendants moved for summary judgment.  Doc. No. 31.  On March 22, 2006, after several extensions of time and after resolution of discovery disputes between the parties, plaintiff filed *Plaintiff's Memorandum Contra*.  Doc. 45.  On March 24, 2004, defendants filed *Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment* ("*Defendants' Reply*").  Doc. No. 46.

## II.    STANDARD OF REVIEW

In the case *sub judice*, plaintiff is proceeding *pro se*, and indeed, has never sought the

appointment of counsel.  As this Court has recognized:

> A *pro se* litigant's pleadings are to be construed liberally and held to a less
> stringent standard than formal pleadings drafted by lawyers.  *See Haines v.
> Kerner*, 404 U.S. 519, 520-21 (1972); *see also Estelle v. Gamble*, 429 U.S. 97,
> 106 (1976).  A court should make a reasonable attempt to read the pleadings to
> state a valid claim on which the plaintiff could prevail, despite the plaintiff's
> failure to cite proper legal authority, his confusion of various legal theories, his
> poor syntax and sentence construction, or his unfamiliarity with the pleading
> requirements.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

> This standard does not mean, however, that *pro se* plaintiffs are entitled to take
> every case to trial.  *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).
> Indeed, courts should not assume the role of advocate for the *pro se* litigant.  *See
> Hall*, 935 F.2d at 1110.

*Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 746 (S.D. Ohio 1998).  *See also Berridge v. Heiser*,

993 F. Supp. 1136, 1141 (S.D. Ohio 1997) (same).  It is with these standards in mind that the

*Defendants' Motion for Summary Judgment* must be decided.

The standard for summary judgment is found in Fed. R. Civ. P. 56, which  provides in

pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is appropriate if "there is no

genuine issue as to any material fact . . . ."  In making this determination, the evidence must be

viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398

U.S. 144 (1970).

Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if

the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, summary judgment is

appropriate if the opposing party fails to make a showing sufficient to establish the existence of

an element essential to that party's case and on which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of

evidence in support of the opposing party's position will be insufficient; there must be evidence

on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.

## III.    ANALYSIS

Plaintiff brings this action under Section 1983. To prevail on a claim under Section

1983, a plaintiff must establish the violation of a right secured by the federal Constitution or

laws and must also establish that the deprivation was committed by a person acting under color

of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810,

814 (6th Cir. 1996); 42 U.S.C. § 1983. Because Section 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under Section

1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510

U.S. 266, 271 (1994).

Plaintiff alleges:

On April 17, 2002, Plaintiff injured his ankle playing basketball. Plaintiff claims
that because the RCI doctors and administrative staff treated him with deliberate
indifference, he suffered a DVT (Blood Clot), and, in addition . . . , Plaintiff
suffered extreme physical and emotional pain.

*Plaintiff's Memorandum Contra*, at 1; *Plaintiff's Declaration*, ¶ 1 attached to *Plaintiff's*

*Memorandum Contra*. Thus, plaintiff's claim implicates the Eighth Amendment to the United

States Constitution. "Where prison officials are so deliberately indifferent to the serious medical

8

needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Plaintiff alleges constitutional violations in two respects. First, plaintiff complains that, after he injured his ankle and was treated by the prison medical staff, he was not allowed to stay in a medical facility for the twenty-two (22) days that he waited to be seen at the orthopedic clinic and that, when he was sent to the clinic, the bus ride was bumpy and unsafe. *Complaint*, ¶¶ 11, 15, 44. Second, plaintiff complains that defendants' delay in prescribing Coumadin actually caused the DVT. *Id.*, ¶¶ 30, 42.

### A.    Non-Placement in Medical Facility and Bus Transport to Orthopedic Clinic

Plaintiff complains that, after he injured his ankle, he was not placed in a medical facility until he was sent to the orthopedic clinic, which caused him to have "a difficult time caring for himself." *Complaint*, ¶ 15. Plaintiff specifically alleges that he had to take sponge baths rather than showers, had to miss some meals and had to rely on his cell-mate to wrap his ankle. *Id.* Because he was not placed in a medical facility promptly after he injured his ankle, he suffered "great mental and emotional trauma, physical pain and humiliation [which] constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution." *Complaint*, ¶ 42. Additionally, plaintiff complains that the bus ride to the orthopedic clinic was a "rough bouncing ride" which caused him pain and was also dangerous because of the DVT. *Id.*, ¶ 26. Plaintiff alleges that his transport by bus instead of by van "constitutes cruel and unusual punishment and deliberate indifference in violation of the Eighth Amendment to the United States Constitution." *Id.*, ¶ 44.

9

Even accepting as true all plaintiff's factual assertions relating to the failure to place him in a medical facility for 22 days and his ride to the medical facility, plaintiff has simply not stated a claim for cruel and unusual punishment cognizable under the Eighth Amendment. Instead, plaintiff's claims in this regard reflect merely a difference of opinion as to how he should have been treated after his ankle injury. However, "a difference in opinion between a prisoner and the medical staff about treatment does not state a cause of action" under the Eighth Amendment to the United States Constitution. *Kirkham v. Wilkinson*, 101 Fed. Appx. 628, 630 (6th Cir. 2004) (citing *Estelle*, 429 U.S. at 104-05).

The question of whether to prescribe crutches and maintain regular housing or, instead, to prescribe bed rest or the use of a wheelchair for an ankle injury–like the decision to transport such a patient by bus or by van–are simply "matter[s] for medical judgment" and do "not represent cruel and unusual punishment." *See e.g.*, *Estelle*, 429 U.S. at 107 (the decision not to take an x-ray of the plaintiff's injured back was a classic example of a matter for medical judgment); *Johnson v. Farley*, Case No. 96-4165, 1999 U.S. App. LEXIS 32506, *7 (7th Cir. Dec. 13, 1999) ("decisions such as whether to order an x-ray or whether to prescribe the use of crutches are matters of medical judgment, and are beyond the purview of the Eighth Amendment").

The United States Court of Appeals for the Sixth Circuit has also clarified that prisoners do not have a "constitutional right to adequate medical care," noting that if that were the case, simple medical malpractice would meet the standard of failure to give "adequate" or "necessary" care. *Williams v. Mehra*, 186 F.3d 685, 691 n.2 (6th Cir. 1999) (*en banc*). Moreover, "where a prisoner has received some medical attention and the dispute is over the adequacy of the

10

treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (citing *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976)).

Plaintiff received prompt medical attention for his ankle injury and, tellingly, plaintiff makes no complaint about the actual treatment of the ankle itself. Plaintiff merely disagrees with the decision to maintain his regular housing assignment rather than place him in a medical facility while awaiting transport to the orthopedic clinic. Plaintiff's disagreement with the doctor's decision to maintain plaintiff's regular housing assignment and with the medical staff's decision to transport him by bus are exactly that–disagreements about medical judgments, rather than a claimed denial of medical care. Such disputes, as noted, "do[] not state a cause of action for deliberate indifference to a serious medical need." *Kirkham*, 101 Fed. Appx. at 630. Moreover, this Court will not second guess the defendant medical staff's judgment under the circumstances presented in this case. *See Graham*, 358 F.3d at 377.

The Court concludes that plaintiff has not raised a genuine issue of material fact with regard to claims relating to the failure to place him in a medical facility and his transportation to the orthopedic clinic by bus. These claims do not state a cause of action under the Eighth Amendment to the United States Constitution. Accordingly, *Defendants' Motion for Summary Judgment* in this regard is meritorious.

**B.**      **Delay in Prescribing Coumadin**

Plaintiff also asserts a claim based on a delay in prescribing Coumadin. He alleges that, had defendants prescribed Coumadin as a precaution promptly after his ankle injury, he would not have suffered the DVT. *Complaint*, ¶ 30. Defendants do not deny that a DVT constitutes a serious medical condition, *Defendants' Motion for Summary Judgment*, at 6, but defendants deny that they acted with deliberate indifference to that serious medical need so "as to unnecessarily and wantonly inflict pain" thereby imposing "cruel and unusual punishment in violation of the Eighth Amendment." *See Horn v. Madison County Fiscal Court*, 22 F.3d at 660 (citing *Estelle v. Gamble*, 429 U.S. at 104). The determination of whether prison officials acted with "deliberate indifference" has an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

**1.**      **Objective component: sufficiently serious medical need**

> The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious." As the Supreme Court explained in *Farmer*, "The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."

*Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing and quoting *Farmer*, 511 U.S. at 834).

"Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person," the objective component of the deliberate indifference test has been met. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898-900 (6th Cir. 2004) (plaintiff Blackmore's appendicitis was an "obvious" illness because, while in police custody, he complained of sharp and severe stomach pains, made these complaints over two days, and vomited, which are the "classic signs of appendicitis."). *See also Estate of Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005)

12

(plaintiff's heart attack was "obvious" because she was complaining of chest pain and difficulty breathing, was lying on the floor and had advised that she had not taken her heart medication).

On the other hand, when the prisoner's care involves only "minor maladies or non-obvious complaints of a serious need for medical care," this Court must look to "verifying medical evidence" of the effect of the delay in treatment. *Blackmore*, 390 F.3d at 898. Specifically, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). "[R]equiring such proof 'will often afford the court with the best available evidence on the question of whether the alleged deprivation is sufficiently serious, and whether the inmate is incarcerated under conditions posing a substantial risk of serious harm.'" *Owensby v. City of Cincinnati*, 385 F. Supp. 2d 626, 652 (S.D. Ohio 2004) (citing *Napier*, 238 F.3d at 742, and *Bargery*, 207 F.3d at 867).

In the instant action, plaintiff complains that defendants failed to promptly prescribe the blood thinner Coumadin, which he claims caused him to develop a DVT in his left leg. *Complaint*, ¶ 30. Plaintiff's symptoms consisted of tenderness and swelling in his left calf following his ankle injury. *Emergency Assessment Form*; *Technical Findings Report*. However, calf tenderness and swelling after an ankle injury are not such obvious symptoms of a DVT that even a lay person, such as this Court, would perceive the seriousness of plaintiff's alleged need for a precautionary prescription of Coumadin. Consequently, and as all parties appear to concede, *Napier* is applicable to this action and plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the" delay in treatment with Coumadin.

13

*Napier*, 238 F.3d at 742.

Defendants argue that plaintiff has simply not proffered verifying medical evidence that the DVT was caused by the delay in prescribing Coumadin; therefore, defendants contend, plaintiff cannot meet the objective component of the deliberate indifference standard. The Court agrees.

Plaintiff alleges that the cause of the DVT is established by the uncontroverted facts that, (1) on April 17, 2002, *i.e.*, the date that he injured his left ankle and was first seen by prison medical personnel, plaintiff did not have a DVT and that (2) on May 9, 2002, plaintiff was diagnosed with a DVT in his left leg. *Plaintiff's Memorandum Contra*, at 18. Plaintiff, however, has failed to present verifying medical evidence that the failure to prescribe Coumadin as a precautionary measure was the underline cause of the DVT.

Although the Sixth Circuit has yet to explicitly address what evidence constitutes "verifying medical evidence," that court has at least suggested that an affidavit from a physician attached to a prisoner's memorandum opposing summary judgment constitutes "verifying medical evidence sufficient to satisfy the *Napier* test for summary judgment purposes." *Johnson v. Karnes*, 398 F.3d 868, 875-76 (6th Cir. 2005). In *Johnson v. Karnes*, the plaintiff "severely cut his hand after tripping on a concrete stoop and falling at least partway through a glass door." *Id.*, at 870. Plaintiff called 911, and an ambulance as well as a police car were dispatched to the scene. *Id.*, at 870-71. While medical personnel were caring for him, the police learned of an outstanding warrant for the plaintiff's arrest. *Id.*, at 870. Plaintiff was taken to the emergency room where medical personnel diagnosed severed tendons and recommended surgery within a week. *Id.* The plaintiff was then transported to jail. *Id.*

14

The plaintiff in *Johnson* was incarcerated for thirty-one (31) days, during which time he made three formal requests for medical treatment, and indicated on each occasion that surgery had been recommended to avoid losing the use of his right hand.  *Id.*, at 871-72.  Nevertheless, surgery was not provided and, during the entire 31 days that he was in jail, the bandages on his injury were changed only once.  *Id.*

The *Johnson* plaintiff claimed that the delay in tendon surgery was the cause of a severe loss of use of his hand.  *Id.*, at 873.  As verifying medical evidence, plaintiff submitted his own deposition testimony and an affidavit of the physician who had treated him in the emergency room and who affirmed her diagnosis and recommendation for surgery within approximately seven days.  *Id.*, at 874.  In addition, the doctor averred that

> it is common medical knowledge, which should be known to every medical practitioner, that severed tendons must be repaired in a timely manner, because over time the severed tendons will retract, and may become irreparable.

*Id.*

The *Johnson* court concluded that, "[e]ven if [the plaintiff's] injury failed to qualify as obvious, [which in this case it does] this affidavit would constitute verifying medical evidence sufficient to satisfy the *Napier* test for summary judgment purposes."  *Id.*, at 875.  "In other words, the [emergency room doctor's] Affidavit, together with [the plaintiff's] deposition testimony that he had lost most use of his right hand, would be sufficient to demonstrate a genuine issue of material fact as to the detrimental effect of the delayed treatment." *Id.*

In similar fashion, the United States District Court for the Northern District of Ohio has accepted as verifying medical evidence the "uncontroverted affidavit" of a defense medical expert who stated that "anyone receiving appropriate medical care within 3 - 4 hours of ingesting antifreeze will not need dialysis."  *Stewart v. City of Niles*, Case No. 4:04 CV 1852, 2005 U.S.

15

Dist. LEXIS 29276, *27 (N.D. Ohio Nov. 23, 2005).  The court accepted this affidavit as

verifying medical evidence that the plaintiff's need for dialysis was the result of a delay in

medical treatment.

On the other hand, that same district court has refused to accept as verifying medical

evidence the testimony of a fellow inmate (who had no apparent medical training).  *Roark v.

Stammitti*, Case No. 1:04 CV 0547, 2005 U.S. Dist. LEXIS 28670, * 11-12, (N.D. Ohio Nov. 9,

2005) .

In the case *sub judice*, the only evidence offered by plaintiff in this regard consists of

certain answers to plaintiff's discovery requests.  Specifically, plaintiff asked Dr. Coulter:

> Admit or deny– Delaying medical placement and treatment of Plaintiff for 22
> days could possibly be the cause of the Plaintiff developing a DVT in his left leg
> after he fractured it.

Dr. Coulter answered: "Qualified admit, it is possible."  *Dr. Coulter's Answers to Plaintiff's

Requests for Admissions* attached as *Exhibit AH* to *Plaintiff's Memorandum Contra*.  Plaintiff

also asked Dr. Coulter: "Explain the cause of the DVT in Plaintiff's left leg."  Dr. Coulter

answered: "Decreased activity could be a cause.  No certainty of cause."  *Dr. Coulter's Answers

to First Set of Interrogatories*.

Plaintiff asked Dr. Martin:

> Admit or deny – It is impossible that the delay of 22 days of medical placement
> and treatment had anything to do with the Plaintiff developing a DVT in his left
> leg after he fractured his left ankle on 04-17-02.

Dr. Martin answered: "It is not impossible, but highly unlikely."  *Dr. Martin's Answers to

Plaintiff's Requests for Admissions*, at 3, attached as *Exhibit K* to *Defendants' Motion for

Summary Judgment*.  All defendants concede that Coumadin can at least help prevent a DVT.

*Id.*; *Dr. Coulter's Answers to Plaintiff's Requests for Admissions* attached as *Exhibit J* to *Plaintiff's Memorandum Contra*; *Defendant Hopkins' Answers to Plaintiff's Second Set of Interrogatories* attached as *Exhibit S* to *Plaintiff's Memorandum Contra*. However, Dr. Martin stated that "Coumadin therapy is not the appropriate treatment for an acute fracture" even in a patient with plaintiff's medical history. *Dr. Martin's Answers to Plaintiff's Requests for Admissions*, at 3; *See also Dr. Coulter's Answers to Plaintiff's Requests for Admissions*, *Exhibits I, J* to *Plaintiff's Memorandum Contra* (although Coumadin therapy may have been appropriate if the fracture was confirmed, a fracture was not confirmed prior to the orthopedic consult).

This Court concludes that this evidence is insufficient to constitute verifying medical evidence that plaintiff should–as a constitutional mandate–have been prescribed Coumadin as a precautionary measure promptly after his ankle injury. Moreover, although plaintiff complains that he must now take Coumadin for the rest of his life, *Complaint*, ¶ 31, plaintiff offers no verifying medical evidence that this condition, even if true, was caused by defendants' failure to earlier prescribe Coumadin. *See Napier*, 238 F.3d at 742.

Accordingly, even when viewing the facts in a light most favorable to plaintiff, the Court concludes that plaintiff has not raised a genuine issue of fact as to whether he met the objective component of the standard for deliberate indifference to his serious medical needs. Thus, defendants are entitled to summary judgment on plaintiff's claim related to the delay in prescribing Coumadin.

17

### 2.    Subjective component: knowledge and disregard

Even if plaintiff had raised a genuine issue of material fact as to the objective component of his deliberate indifference claim, defendants are nevertheless entitled to summary judgment because plaintiff has not presented a genuine issue of material fact as to the subjective component of his claim.  *See Farmer v. Brennan*, 511 U.S. at 834.  "[P]laintiff bears the onerous burden of proving the official's subjective knowledge[.]"  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

"To satisfy the subjective component, an inmate must show that prison officials had 'a sufficiently culpable state of mind.'"  *Bargery*, 207 F.3d at 867 (citing and quoting *Farmer*, 511 U.S. at 834).  That is, the plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 837).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  *Id.* (quoting *Farmer*, 511 U.S. at 835).  "Put simply, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'"  *Id.* (quoting *Farmer*, 511 U.S. at 836).  To be actionable under the Constitution, a prison official's misconduct must be "repugnant to the conscience of mankind" and "incompatible with the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 104-06.  Emphasizing the subjective nature of this inquiry, the United States Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned

18

as the infliction of punishment." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 838).

The United States Court of Appeals for the Sixth Circuit has "explained that 'the requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.'" *Id.* "[W]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*

In the instant action, plaintiff alleges that:

[His] history [of a previous DVT] put the Plaintiff at a higher risk for developing another Blood Clot, even more so after he fracture [*sic*] his left ankle. The medical history of the Plaintiff should have affected the decision by defendants Coulter and Hopkins concerning the placement and treatment of the Plaintiff.

*Complaint*, ¶ 19. Based on these facts, plaintiff concludes that the subjective component of the deliberate indifference standard has been met because defendants knew of the risk that he would develop a DVT and at least recklessly chose to disregard this knowledge. *Id.* ¶¶ 40-43. The Court disagrees.

Even accepting all plaintiff's allegations as true, plaintiff merely alleges medical negligence, which simply does not fall within the ambit of the Eighth Amendment. *See Comstock*, 273 F.3d at 703. Even if plaintiff had pleaded more than negligence, the evidence of record establishes that defendants did not consider plaintiff to be at increased risk of developing a DVT following his ankle injury; even if they did, there is no evidence that they chose to disregard that risk. Specifically, plaintiff asked Dr. Coulter:

In the booklet "A Guide to DVT," put out by Aventis Pharmaceuticals (2003) p.3,

19

it lists risk factors: "that may put a person at risk for developing DVT."  Five of those risk factors are: "Age ≥40, and increases with age, obesity, prior DVT, prolonged immobility, trauma.  Trauma is one of the risk factors and the Plaintiff had trauma to his left ankle.  Therefore, should not the fact that plaintiff's medical history (a prior DVT and previously on Coumadin) and the fact that the Plaintiff had trauma to his left ankle (along with the above risk factors) demand the necessity that the Plaintiff be placed in a medical facility and prescribed Coumadin [before 22 days after the ankle injury]?

*Exhibit I* attached to *Plaintiff's Memorandum Contra*.  Dr. Coulter responded:

Some of the risk factors apply, these being – history of DVT, now (at the time of plaintiff's ankle injury) stable and off Coumadin, and trauma very recent (at that time).  There was no obesity, no prolonged immobilization and [plaintiff] was barely over 40 years old.  At that time, I did not feel that it was necessary to start Coumadin, the ankle was stable and [plaintiff] was still mobile with crutches, Ace bandage, no weight bearing.

*Id.*  Similarly, plaintiff asked Dr. Martin:

Admit or deny - Risk factors of DVT increases when a person has a history of a previous DVT, is overweight by 50-60 pounds, is 40 years old or older and trauma to an ankle has just occurred.

*Exhibit K* to *Defendants' Motion for Summary Judgment*.  Dr. Martin answered:

Deny.  Age is not clearly a risk factor.  Morbid obesity, not just 50-60 pounds, is a risk factor.  "Trauma" is overly vague.  Prolonged periods of immobility, *i.e.*, bed rest is a risk factor, not the presence of a fracture itself.

*Id.*

In sum, in Dr. Martin's medical opinion, plaintiff possessed only one risk factor for developing a DVT, *i.e.*, a prior DVT, and in Dr. Coulter's medical opinion, risk factors presented by plaintiff for developing a DVT were insufficient to warrant prescribing Coumadin as a precautionary measure.

In response, plaintiff offers nothing but his disagreement with the medical doctors' opinions about the course of his treatment and speculation as to the probable outcome had the defendants treated him the way he thought was proper, *i.e.*, he would not have suffered a DVT. This argument falls far short of meeting plaintiff's burden of demonstrating that each defendant possessed "a sufficiently culpable state of mind" to satisfy the subjective component of the deliberate indifference test. *Farmer*, 511 U.S. at 834.

Moreover, even if plaintiff's medical opinion as to the appropriate course of his treatment is in medical fact correct, his constitutional claim must still fail because "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence[2] which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703. Defendants' decision to delay prescribing Coumadin simply is not so "repugnant to the conscience of mankind" and "incompatible with the evolving standards of decency that mark the progress of a maturing society" to meet the subjective component of the deliberate indifference standard required by the Constitution of the United States. *Estelle*, 429 U.S. at 104-106.

Accordingly, even taking the facts in the light most favorable to plaintiff, plaintiff has not raised a genuine issue of material fact as to whether defendants violated the Eighth and Fourteenth Amendments in connection with plaintiff's medical care.

_____

[2]The Court in no way intends to suggest that it finds any defendant's treatment of plaintiff incompetent in some way. The Court is simply stating the law as it applies to this case.

**WHEREUPON**, in light of the foregoing, *Defendants' Motion for Summary Judgment*, Doc. No. 31, is **GRANTED**.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this action.


March 31, 2006                          *s/Norah McCann King*
Date                                    Norah McCann King
                                        United States Magistrate Judge

22